```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
  XINGFUTANG INTERNATIONAL CO.                              :
  LTD, et al.,                                              :   **MEMORANDUM DECISION AND**
                                                            :   **ORDER DISMISSING**
                                    Plaintiffs,             :   **DEFENDANTS'**
                                                            :   **COUNTERCLAIMS**
                       - against -                          :
                                                            :    22-cv-1508 (BMC)
                                                            :
  XING FU TANG, LLC, et al.,                                :
                                                            :
                                                            :
                                                            :
                                    Defendants.             :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

The only issue left for the Court in this trademark infringement case is whether it should continue to preside over defendants' counterclaims in light of the parties' agreements' forum selection clauses mandating that they litigate their disputes over the relevant trademarks in Taiwan. Plaintiffs and defendants are in the bubble tea business – the former are Taiwanese licensors or owners of the marks, and the latter are their American licensees. For the reasons set forth below, defendants' counterclaims are dismissed pursuant to the NY Territorial Agreement and U.S. Territorial Agreement's forum selection clauses.

## BACKGROUND

It is not uncommon that a party will bring litigation in the United States to support ongoing litigation in a foreign country. See, e.g., Kiobel by Samkalden v. Cravath, Swaine & Moore LLP, 895 F.3d 238, 241 (2d Cir. 2018); Mees v. Buiter, 793 F.3d 291, 296 (2d Cir. 2015). That appeared to be the situation when this case was commenced. Plaintiffs, as the alleged trademark owners or licensors, had commenced litigation in Taiwan to declare defendants'

license invalid, and while that proceeding was pending, plaintiffs commenced this action, seeking to enjoin defendants (their franchisees) from acting as licensees or using plaintiffs' trademarks in the United States pending the outcome of the proceedings in Taiwan.  This Court entered a preliminary injunction for the relief sought – namely, prohibiting defendants from opening bubble tea stores in the United States using plaintiffs' intellectual property – and stayed this case pending the outcome of the proceedings in Taiwan.  In addition, defendants brought fifteen counterclaims in this Court (which generally alleged that plaintiffs had defamed them and interfered with their business) and requested an injunction against plaintiffs.  The Court revised the preliminary injunction it had entered in favor of plaintiffs to prohibit plaintiffs from publicly disparaging defendants.

Since then, the Taiwanese District Court held that plaintiffs had no standing to bring the action in Taiwan.  It held that the licensor rights remained with an affiliated entity, Agility, in whose name plaintiffs had not sued here.  The Taiwanese court therefore dismissed the action without reaching the merits of the parties' rights under their various contractual agreements. Plaintiffs appealed, but the Taiwanese High Court dismissed their appeal.  Although there are currently no proceedings pending between plaintiffs and defendants in Taiwan, Agility has commenced litigation against defendants in Taiwan.

At the parties' most recent hearing before this Court, the Court dismissed plaintiffs' complaint for lack of standing, as per the Taiwanese court's determination that they were not owners of the marks, and dissolved the injunctions insofar as it restrained defendants.  The Court additionally ordered defendants to show cause as to why their counterclaims should not be dismissed pursuant to the forum selection clauses in the NY Territorial Agreement and the US Territorial Agreement, both of which are between defendants and nonparty Agility and concern

the Xingfutang trademark.  Those agreements each contain an identical forum selection clause: "The parties agree that disputes arising from this Agreement shall be submitted to the exclusive jurisdiction of Taiwan Hsinchu District Court as the court of first instance and they agree that the laws of Taiwan shall be the governing laws of this Agreement."  (NY Territorial Agreement, Dkt. 14-1 at Art. 32, § 1; US Territorial Agreement, Dkt. 14-2 at Art. 31, § 1).

## LEGAL STANDARD

The doctrine of international comity dictates that American courts enforce valid forum selection clauses in international agreements out of respect for the integrity and competence of foreign tribunals.  See Roby v. Corp. of Lloyds, 996 F.2d 1353 (2d Cir. 1993).  The Second Circuit framework for determining enforceability of a forum selection clause is well-established:

> The court asks (1) whether the clause was reasonably communicated to the party resisting enforcement, (2) whether the clause is mandatory or permissive, i.e., whether the parties are required to bring any dispute to the designated forum or are simply permitted to do so, and (3) whether the claims and parties involved in the suit are subject to the forum selection clause.  If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable.  A party can overcome this presumption only by (4) making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.

Brightman v. InMode Ltd., No. 23-1221, 2024 WL 1598118, at *1 (2d Cir. April 12, 2024) (cleaned up).  A party can demonstrate that a clause is unreasonable by showing that "(1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum state; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court."  Phillips v. Audio Active Ltd., 494 F.3d 378, 292 (2d Cir. 2007) (citing Roby, 996 F.2d at 1363).  The Second Circuit has consistently held that, when a forum selection clause is enforceable, it is "to be interpreted broadly and [is] not

3

restricted to pure breaches of the contracts containing the clauses." Russbeer Int'l LLC v. OAO Baltika Brewing Co., No. 07-cv-1212, 2008 WL 905044, at *5 (E.D.N.Y. March 31, 2008).

If a court finds that a forum selection clause is valid pursuant to the above factors, it may *sua sponte* enforce that provision. See Jones v. Ponant USA LLC, No. 19-cv-3041, 2020 WL 3172778, at *1 (June 15, 2020); United States ex rel. QSR Steel Corp., LLC v. Safeco Ins. Co. of Am., No. 14-cv-1017, 2015 WL 4393576, at *5 (D. Conn. July 16, 2015). *Sua sponte* dismissal of claims that belong in another jurisdiction is warranted under the *forum non conveniens* doctrine. See In re Alcon Shareholder Litig., 719 F. Supp. 2d 263, 279 (S.D.N.Y. May 24, 2010).

## DISCUSSION

### I.  Whether the forum selection clause was reasonably communicated

A forum selection clause is "reasonably communicated" if it is phrased in clear and unambiguous language. See Effron v. Sun Line Cruises, 67 F.3d 7, 9 (2d Cir. 1995). Courts in this circuit "consider the inclusion of a forum selection clause within the main text of a contractual agreement to support a finding that the [] clause was reasonably communicated." Kaman Aerospace Corp. v. Central Copters, Inc., No. 22-cv-1445, 2023 WL 5530684, at *5 (D. Conn. Aug. 28, 2023). Here, the clause was phrased clearly – it appeared in the main body of the agreements, in the same font as the rest of the documents. It was also unambiguous, stating in plain terms that all disputes arising from the agreements would be submitted to a Taiwanese court. Defendants do not challenge that the clause was reasonably communicated.

### II.  Whether the forum selection clause is mandatory

A forum selection clause is mandatory "when it confers exclusive jurisdiction on the

4

designated forum." Phillips, 494 F.3d at 386. The clause at issue so confers: "disputes arising from this Agreement *shall* be submitted to the *exclusive jurisdiction* of [the Taiwan Court]." Defendants also do not challenge that the clause is mandatory.

### III. Whether the claims and parties are subject to the forum selection clause

A. Defendants' Counterclaims 1-6, 10, and 12-14

Defendants' response to the Court's July 16, 2024 Order to Show Cause appears to abandon counterclaims 1 through 6, 10, and 12 through 14. They state that the Court should not dismiss their counterclaims "in their entirety because the forum selection clauses in the NY Territorial Agreement and the US Territorial Agreement do not apply to all of Defendants' claims," namely, counterclaims 7 through 9, 11, and 15. It follows that the other counterclaims *are* based on the two territorial agreements which, as all parties agree, are subject to a Taiwanese forum selection clause. Given the Court's recognition that, pursuant to this clause, disputes arising from these agreements should be adjudicated by the Taiwanese courts, it makes sense that defendants would no longer pursue these claims. The forum selection clause is thus applicable to these claims.

B. Defendants' Counterclaims 7-9, 11, and 15

Defendants argue that they should be allowed to proceed on their remaining counter-claims because they do not arise under the two territorial agreements, and are therefore not subject to the forum selection clauses. But this argument overlooks the "closely related" doctrine: a contract containing a forum selection clause is enforceable against a non-signatory if it is "closely related" to a signatory. See Magi XXI, Inc. v. Stato della Citta del Vaticano, 714 F.3d 714, 722 (2d Cir. 2013) ("A literal approach to interpreting forum selection clauses – an approach that always ignored affiliates of the signatories – could undermine the contribution that

5

such clauses have been praised for making to certainty in commercial transactions."). To meet the standard for "closely related," enforceability of the forum selection clause against a nonparty must be "foreseeable prior to suit, which implies that the non-signatory must have been otherwise involved in the transaction in some matter." Recurrent Capital Bridge Fund I, LLC v. ISR Systems and Sensors Corp., 875 F. Supp. 2d 297, 307-08 (S.D.N.Y. 2012); see also Cuno, Inc. v. Hayward Indust. Prods., Inc., No. 3-cv-3076, 2005 WL 1123877, at *6 (S.D.N.Y. May 10, 2005) (forum selection clause between patent licensor and licensee enforceable against licensee's employer).

Plaintiffs and both signatories to the two agreements are sufficiently "closely related" such that the clause applies to all of their trademark-related dealings: all three entities used the same brand's trademarks; plaintiff XFT HQ and Agility are owned by the same person (plaintiff Yung-Liang Chen); both plaintiffs' original claims and a number of defendants' counterclaims necessitated interpretation of the Agility agreements; and plaintiffs and Agility licensed related trademarks to defendants. Indeed, both the Taiwanese court and this Court have held that Agility was the proper party in interest to litigate claims underlying plaintiffs' initial lawsuit. Furthermore, the Trademark License Agreement (between plaintiffs and defendants) and the two territorial agreements (between Agility and defendants) concern the same subject matter – the licensing of the Xingfutang trademark. See Moose Toys Pty, Ltd. v. Creative Kids Far East Inc., 195 F. Supp. 3d 599, 605 (S.D.N.Y. 2016) (nonparty owner of trademark subject to licensing agreement's forum selection clause); Sick Kids (Need) Involved People of New York, Inc. v. 1561599, No. 15-cv-3756, 2015 WL 5672042 at *5 n.6 (S.D.N.Y. Sept. 25, 2015) (nonparty company executive subject to company's licensing agreement's forum selection clause).

6

Relatedly, I do not find persuasive defendants' argument that the subject matter of these counterclaims are wholly unrelated to the territorial agreements containing the forum selection clause. Consistent with this Court's duty to broadly interpret forum selection clauses, I must "examine the substance of [the counterclaims], shorn of their labels." Phillips, 494 F.3d at 388. As an initial matter, defendants make no effort to explain why these claims are unrelated to the territorial agreements beyond the conclusory statement that the claims are not "based on" those agreements. Even so, for defendants' trade libel counterclaims (7 and 8), are related to the agreements, which allow defendants to use plaintiffs' brand and trademark, because defendants are claiming the alleged libel caused harm to those exact things. Additionally, when the Court "examines the[ir] substance," the remainder of the counterclaims are thinly-veiled breach of contract claims. Counterclaim 9, intentional interference with contractual relationships, explicitly alleges that plaintiffs improperly entered into territorial agreements with other parties (which was prohibited by the agreements). Finally, counterclaim 11, unfair competition, alleges that plaintiffs were "interfering with defendants' exclusive license to use the [XFT] trademarks," which is the precise subject of the exclusivity agreements.[1]

Given the deep interrelatedness between all three of the parties, it was foreseeable that the forum selection clauses in the two territorial agreements would be enforced in a dispute between plaintiffs and defendants. The counterclaims and both sides are, therefore, covered by the forum selection clauses. Because the first three elements of the test are met, the forum selection clause is presumptively valid.

---

[1] Counterclaim 15 requests injunctive relief enjoining plaintiffs from "engaging in acts of illegal and unfair competition."

### IV. Whether defendants have shown that enforcement of the forum selection clauses would be unreasonable or unjust

Again, a party resisting enforcement of a presumptively valid forum selection clause must point to one of the following to show that it is unreasonable: (1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum in which the action was brought; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court. The resisting entity has "a heavy burden of showing that it would be unfair, unjust, or unreasonable to hold that party to [its] bargain." Martinez v. Bloomberg LP, 740 F.3d 211, 218-19 (2d Cir. 2014).

First, defendants do not contend that either the NY Territorial Agreement or the US Territorial agreement, or any of their individual provisions, were the product of fraud or overreaching. More broadly, having reviewed all filings in this litigation, the Court is not aware of any fraud or overreaching that resulted in the clause or the agreements.

Second, defendants do not contend that the law to be applied in the selective forum, Taiwan, is fundamentally unfair. "Fundamental unfairness" in a court system is a high bar, usually marked by substantial bias or corruption, see, e.g., Presbyterian Church of Sudan v. Talisman Energy, Inc., 244 F. Supp. 2d 289, 335 (S.D.N.Y. 2003), neither of which is present here.

I address the last two factors together, as they both relate to whether defendants can pursue their claims against plaintiffs in Taiwan. Defendants argue, with a declaration from their legal expert Chia-Ching Wu as support, that they are "prohibited" from bringing their claims against plaintiffs in a Taiwanese court because their dispute with plaintiffs "has been finally and fully resolved." They cite Article 58 of the Taiwanese Code of Civil Procedure:

8

> (1) Where necessary for purposes of preventing material harm or imminent danger or other similar circumstances, an application may be made for an injunction maintaining a temporary status quo with regard to the legal relation in dispute.
>
> (2) The ruling provided in the preceding paragraph may be issued only where the legal relation in dispute may be ascertained in an action on the merits. The injunction provided in the first paragraph may order certain prestation to be performed in advance.
>
> (3) The court shall accord the parties an opportunity to be heard before issuing the rulings provided in the first paragraph and the preceding paragraph, except where the court considers it inappropriate to do so.

Without further explanation or analysis, Wu simply states that this provision means that defendants cannot sue plaintiffs in Taiwan because their dispute has been "definitively resolved" by the above-referenced Taiwanese court proceedings.

The Court is not persuaded. As an initial matter, defendants make no effort to explain why the case of plaintiffs v. defendants would preclude the case of defendants v. plaintiffs. As defendants themselves acknowledge, their counterclaims concern separate issues from the territorial agreements – if that's the case (it's not – see supra § 3), how could the Taiwanese court have possibly resolved this unrelated issue? Additionally, even if the Taiwanese version of *res judicata* worked in both directions, the issue of the parties' rights under the territorial agreement was nowhere near "definitively resolved." Indeed, as previously noted, the Taiwanese District Court dismissed plaintiffs' case for lack of standing, before it reached the merits (a concept we know Taiwanese law acknowledges, see supra Art. 58(2)). Defendants' brief makes no effort to explain why the Taiwanese court's decision prevents them from filing an action against plaintiffs in light of these two factors. Additionally, defendants fail to explain why they cannot raise these counterclaims in Agility's pending lawsuit against them.

9

Therefore, the Court sees no reason why litigating in Taiwan would contravene a strong public policy of federal law.  Cf. Martinez, 740 F.3d at 219-220 (citing civil rights violations, risk to American securities investors, and inaccessibility of foreign court system as examples of what would contravene strong American public policy).  Additionally, defendants have not convinced me that they have no recourse whatsoever against plaintiffs in Taiwan – it "may be more costly or difficult, but not [] impossible."  Phillips, 494 F.3d at 393.

Defendants have thus failed to meet the "heavy burden" of showing why enforcement of the presumptively valid forum selection clause would be unjust or unreasonable.

## CONCLUSION

The forum selection clause in the two territorial agreements between Agility and Defendants is enforceable and applies to the dispute between plaintiffs and defendants regarding the Xingfutang franchise and trademark.  Defendants' remaining counterclaims are therefore dismissed without prejudice to litigating them in Taiwan.  The Clerk is directed to enter judgment dismissing all claims and counterclaims.

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
       September 19, 2024